UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO ALVAREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. CV 14-4768-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when she failed to properly consider the impact of his obesity on his ability to work, discounted his testimony, and found that he could perform his past job. For the following reasons, the Court concludes that the ALJ did not err.

II. SUMMARY OF PROCEEDINGS

In October 2010, Plaintiff applied for DIB and SSI, alleging that he had been disabled since August 2010, due to heart problems,

diabetes, hypertension, hyperlipidemia, depression, stress, and anxiety. (Administrative Record ("AR") 88, 121, 123, 154.)  His applications were denied initially and on reconsideration and he requested and was granted a hearing before an ALJ. (AR 30, 36, 69-72.)  In October 2012, he appeared with counsel and testified at the hearing. (AR 39-68.)  Thereafter, the ALJ issued a decision denying benefits. (AR 10-25.)  Plaintiff appealed to the Appeals Council, which denied review more than a year later. (AR 1-9.)  Plaintiff then filed the instant action.

## III.   ANALYSIS

A.   <u>The ALJ's Consideration of Plaintiff's Obesity</u>

Plaintiff contends that the ALJ erred when she failed to consider his obesity in determining his residual functional capacity. (Joint Stip. at 3-5.)  For the following reasons, the Court disagrees.

An ALJ is required to consider the effects of a claimant's obesity on his ability to work, both in isolation and in combination with any other impairments. *Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003) (citing 20 C.F.R. §§ 404.1545(e), 416.945(e)).  At the same time, the claimant has the burden of showing how his obesity, in combination with his other impairments, impacts his limitations. *See Hoffman v. Astrue*, 266 Fed. App'x 623, 625 (9th Cir. 2008), *citing Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The ALJ found that Plaintiff's obesity was a severe impairment. She noted that Plaintiff, who is 5'-3" tall, weighed more than 200 pounds from September 2010, a month after his heart attack, through July 2012, the date last insured. (AR 18, 19.)  The ALJ also noted that he denied chest pain throughout this period, his blood pressure remained normal, he was able to sustain 30 minutes of exertion before

experiencing shortness of breath (when evaluated in December 2010), and he offered no other complaints at his regular check-ups. (AR 19.) The ALJ concluded that Plaintiff's obesity impacted his physical ability but did not result in his meeting or equaling a Listing. (AR 21.) The ALJ then determined that Plaintiff was capable of performing a full range of light work, meaning that he could lift up to 20 pounds occasionally and ten pounds frequently and stand or walk for up to six hours in an eight-hour workday. (AR 21.)

Plaintiff argues that the ALJ was required to more fully address the impact of his obesity, individually and in combination with his other impairments, in assessing his residual functional capacity. There is no merit to this argument.

Plaintiff has failed to point to any medical evidence suggesting that his obesity impacted his functional limitations beyond what the ALJ described. Although Plaintiff testified that he had complained to his doctors about weakness in his hands and legs and that they attributed it to his obesity (AR 48), the ALJ noted that the record did not support this testimony. (AR 49.) In fact, no doctor drew a connection between Plaintiff's obesity and his hand and leg pain. Indeed, as Plaintiff later explained, he believed that it was connected to his heart attack. (AR 52.) For these reasons, the Court concludes that the ALJ did not err in not further addressing Plaintiff's obesity and any impact it had on his residual functional capacity. *See*, *e.g.*, *Rocha v. Colvin*, 2015 WL 9239771, at *2 (9th Cir. Dec. 17, 2015) (holding ALJ adequately considered claimant's obesity where there was little evidence in the record to suggest she was limited by her obesity and "the majority of doctors' assessments evaluated by the ALJ merely noted her weight and found no limitations

due to obesity."); *see also Garcia v. Comm'r of Soc. Sec. Admin.*, 498 F. App'x 710, 712 (9th Cir. 2012) (affirming ALJ's decision recognizing claimant's obesity as severe impairment and relying on functional limitations suggested by doctors).

B.   <u>The Credibility Determination</u>

In October 2012 Plaintiff testified that, since suffering a heart attack in August 2010, he had less strength in his legs and hands and could not lose weight because he was anxious and depressed. (AR 48-49.) He explained that certain activities, such as helping his son garden, made him feel weak and that he could not stand or walk for more than 15 minutes at a time without growing short of breath. (AR 52.)

The ALJ found that Plaintiff's coronary artery disease post-myocardial infarction, obesity, and hypertension were severe impairments that could reasonably be expected to cause his alleged symptoms but concluded that Plaintiff was not entirely credible. (AR 19, 23.) Plaintiff claims that the reasons the ALJ gave for doing so were inadequate. For the following reasons, the credibility finding is affirmed.[1]

ALJs are tasked with judging a claimant's credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In doing so, they can rely on ordinary credibility techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where there is no evidence of malingering, however, they can only reject a claimant's testimony for specific, clear, and convincing reasons that are supported by

---

[1] Plaintiff has not challenged the ALJ's findings regarding his claimed mental impairments.

substantial evidence in the record. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

The ALJ gave a number of reasons why she discounted Plaintiff's testimony. First, she found that the medical evidence did not support his alleged degree of disability. This is a factor that can be taken into account in determining a claimant's credibility, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), and it is supported by substantial evidence in the record.

The medical record in this case is thin. It shows that, in August 2010, Plaintiff was hospitalized for four days after presenting at the ER with complaints of chest pressure lasting five days. (AR 257.) He was diagnosed with a myocardial infarction and treated with catheterization and a stent. (AR 216, 218-19.) At a December 2010 cardiac assessment, he did not have any chest pain and was able to exert himself for 30 minutes without shortness of breath. (AR 271-72.) The remaining records consist essentially of routine check-ups that reveal, on the whole, that Plaintiff was doing well. His chest, lungs, and extremities were found to be within normal limits and he was continued on his usual medications. (AR 375-76, 381, 382, 385, 390.)

The ALJ also found that Plaintiff's blood pressure and diabetes were well-controlled with medication, he did not experience any recurring chest pain, and he did not seek additional treatment for weakness in his arms and legs. These are also legitimate reasons for questioning his testimony, *see Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (holding ALJ may use claimant's failure to seek treatment as basis for finding complaints exaggerated); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (noting conservative

treatment, including use of only over-the-counter medication to control pain, supported discounting claimant's testimony regarding pain), and they, too, are supported by substantial evidence.  Although Plaintiff complained of pain in his chest and shoulder on one visit, the pain was relieved with Motrin.  (AR 294.)  After Plaintiff complained of weakness in his leg at a November 2011 check up (387), he was prescribed Ibuprofen.  (AR 387.)  His check-ups were otherwise unremarkable.  (AR 373-98.)  In July 2012, he had no complaints and his heart, lungs, arms, and legs were all found to be within normal limits.  (AR 375-76.)  Plaintiff has not pointed to any other treatment that he sought or received.  Thus, the record supports the ALJ's finding that Plaintiff's treatment was conservative and minimal.

The ALJ also relied on the fact that Plaintiff was "advised to resume physical activity" upon his discharge from the hospital in August 2010.  (AR 23.)  As Plaintiff points out, however, this was a mischaracterization of the doctor's advice.  In fact, Plaintiff was advised to "resume physical activity *as tolerated.*"  (AR 257 (emphasis added).)  As such, the Court finds that this reason is not wholly supported by the record.

The ALJ also found that Plaintiff's allegations were undermined by his testimony regarding his daily activities.  Here, again, the Court disagrees.  Though a claimant's ability to perform daily activities may support an adverse credibility finding, the ALJ failed to explain what specific activities undermined Plaintiff's testimony or how his ability to perform these activities could translate into the workplace.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  To begin with, the ALJ's finding that Plaintiff could care for his personal needs, drive, and "perform household chores and daily living

activities" (AR 23), is not supported by the evidence.  Plaintiff wrote in a disability report in December 2010 that, though he could look after his personal care, the only chore that he could do was "[light] sweeping" and he could drive only for short distances.  (AR 173-75.)  The ALJ did not explain how this fairly minimal level of activity undermined his testimony that he could not stand or walk for longer than 15 minutes or how his ability to perform these activities transferred to a work setting.  As such, this justification is rejected.

Finally, the ALJ noted that there was "no indication" that Plaintiff had sought work between his last job in 2007 and his heart attack in 2010, suggesting, it seems, that he was not trying to find work.  (AR 23.)  Plaintiff testified, however, that he had tried to find another job in a factory, as a gardener or sweeper, without success.  (AR 47.)  Thus, the evidence is to the contrary.

In the end, two of the reasons cited by the ALJ for questioning Plaintiff's testimony are supported by the evidence and two are not. The Court concludes that the total lack of medical evidence to support Plaintiff's claims coupled with his failure to seek additional treatment for his allegedly-disabling symptoms are enough to support the ALJ's credibility finding in this case.  *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  For that reason, it is affirmed.

C.   The Residual Functional Capacity Determination

Plaintiff contends that the ALJ erred by not incorporating into the residual functional capacity determination additional limitations caused by his obesity and weakness.  (Joint Stip. at 19-20.)  As set forth above, however, the Court finds that the ALJ did not err in

1  formulating the residual functional capacity because she was only
2  required to include "those limitations supported by substantial
3  evidence" and she did.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886
4  (9th Cir. 2006).

5  D.   <u>Plaintiff's Past Relevant Work</u>

6       Plaintiff contends that the ALJ erred in finding that he could
7  perform his past work as a compression molding machine tender.  He
8  argues that the ALJ misstated the vocational expert's testimony, who,
9  in his view, testified that he could not perform that work, either as
10 generally performed in the national economy or as actually performed.
11 (Joint Stip. at 21-22, 24-26.)

12      At step four of the sequential evaluation process, the claimant
13 has the burden of showing that he can no longer perform his past
14 relevant work.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001);
15 20 C.F.R. §§ 404.1520(e) and 416.920(e).  "[T]he ALJ still has a duty
16 to make the requisite factual findings to support his conclusion."
17 *Pinto*, 249 F.3d at 844.  Even so, the ALJ is only required to make
18 such findings regarding either a claimant's past relevant work as
19 generally performed or as actually performed.  *Id.* at 845.  The ALJ
20 discharged that duty here.

21      The ALJ determined that Plaintiff could perform the full range of
22 light work.  (AR 21.)  The vocational expert testified that
23 Plaintiff's past work was as a machine tender, Dictionary of
24 Occupational Titles ("DOT") No. 556.685-022, which was classified as
25 light work as generally performed but as medium work as Plaintiff
26 performed it.  (AR 60.)  The vocational expert then testified that,
27 based on her knowledge of the industry, an individual with Plaintiff's
28

capabilities would be able to perform the job as it is generally performed in the economy.[2] (AR 61.)

Plaintiff argues that the vocational expert subsequently changed her mind and testified that Plaintiff could not perform this job as it is generally performed in the economy because it required Plaintiff to stand for eight hours and he could only stand for six. (Joint Stip. at 21-22.) The Court does not find this argument persuasive.

The vocational expert's testimony is ambiguous in places. Further, some of it is inaudible at critical points and, at other points, the ALJ, Plaintiff's lawyer, and the vocational expert seem to be talking at the same time, muddling the record. (AR 54-67.) This confusion is heightened by the fact that Plaintiff's former job was determined by the vocational expert to be a combination of two different and somewhat unrelated jobs under the DOT. (AR 54-61.) But there is no ambiguity at page 61 of the administrative hearing transcript that the vocational expert believed that Plaintiff could perform the job of molding machine tender--which is light work--as it is generally performed in the national economy. (AR 61.) Later, in response to Plaintiff's counsel's questions suggesting that this job required standing for eight hours a day, the vocational expert's testimony was less clear, seemingly agreeing with counsel at times

---

[2] Plaintiff points out that the ALJ mistakenly transposed the vocational expert's testimony, concluding that she had testified that the machine tender job was medium work *as generally performed* and light work *as actually performed*, even though the vocational expert testified to the opposite. (AR 24, 60.) Though Plaintiff is right, this error did not affect the ALJ's ultimate conclusion that Plaintiff could perform his past work as it is generally performed, which is supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding error harmless where mistake was "irrelevant to the ALJ's ultimate disability conclusion).

that the job required standing for eight hours and disagreeing at other times. (AR 62-67.)

The ALJ interpreted the vocational expert's testimony as endorsing a finding that the machine tender job was light work and that Plaintiff could perform it despite the fact that he could only stand for up to six hours a day. Because this interpretation was not unreasonable, it is entitled to deference. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (explaining court must uphold ALJ's finding where evidence is susceptible to more than one rational interpretation); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (upholding ALJ's credibility finding where evidence was contradictory and/or ambiguous). This finding is further supported by the DOT, which identifies that job of machine tender as light work, and Social Security Ruling 83-10, which explains that light work requires standing and/or walking for six hours a day.

## IV. CONCLUSION

For these reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: March 3, 2016

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\ALVAREZ, R 4768\Memo Opinion and Order.wpd